UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM H. CRAWLEY, | ) | 1:15CV0081 |
| | ) | |
| Petitioner | ) | |
| | ) | JUDGE DONALD NUGENT |
| v. | ) | (Mag. Judge Kenneth S. McHargh) |
| | ) | |
| MARGARET BRADSHAW, | ) | |
| Warden, | ) | |
| | ) | |
| Respondent | ) | REPORT AND |
| | ) | <u>RECOMMENDATION</u> |

McHARGH, MAG. JUDGE

The petitioner William H. Crawley ("Crawley") filed a petition for a writ of habeas corpus arising out of his 2013 conviction for aggravated arson in the Cuyahoga County Court of Common Pleas. (Doc. 1.) In his petition, Crawley raised a single ground for relief:

> 1. Petitioner was denied his United States Constitution and Ohio Constitution rights to due process and equal protection when he was found guilty of Count 1 of his indictment aggravated arson when the evidence was insufficient to support a substantial risk of physical injury to Dan Rogers.

(Doc. 1, § 12.)

The respondent has filed a Return of Writ (doc. 7), but Crawley has not filed a Traverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The court of appeals set forth the following factual and procedural background:

On Monday, August 6, 2012, Valley Freightliner,1 a new truck dealership located in Brook Park, Ohio, that sells and services all models of trucks, suffered a catastrophic loss due to fire. Crawley was employed as a "garage man" at Valley Freightliner. His duties included removing trash, delivering trucks, picking up trucks, and road-testing trucks if needed. Crawley would also perform some oil changes on the service department pickup trucks.

On the day in question, Crawley arrived for work at approximately 5:30 a.m. for his 7:00 a.m. shift and waited in the driveway. A few moments later, Crawley's supervisor at Valley Freightliner, Dan Rogers, arrived. Rogers unlocked the gate at the facility's W. 150th Street entrance, pulled into the employee's parking lot, and permitted Crawley on the premises. Crawley pulled his vehicle in and parked near Rogers's vehicle. Crawley smoked a cigarette outside while Rogers entered the side door of the building, turned off the premises's alarm, and turned on the lights and compressor. Rogers then entered the service office in order to prepare for the day's work. Rogers and Crawley were the only people on the premises at this time.

Rogers was in the service office preparing repair orders when, shortly after entering the office, he heard Crawley yelling his name from the shop. Rogers walked out of the service office to find Crawley, emotional and upset, standing outside of the building, on the east side, located between Bay 1 and Bay 2. When Rogers approached Crawley, Crawley told him that a truck was on fire. Thinking Crawley meant his personal truck that he drove to work that morning, Rogers looked over at his own truck. Crawley then told him that it was the truck in Bay 2 on the west side of the shop that was on fire. Crawley's responsibilities did not include working on the truck in Bay 2.

Rogers testified that Bay 2 is approximately 35 feet from the service office and is the second bay from the office. He stated that when he walked over to Crawley, he did not see or smell anything unusual.

When he looked inside the building, Rogers stated that he saw a fire on top of the hood of the truck and a fire under the truck and he began to

walk toward the truck. Rogers testified that he was about ten feet away from the truck when Crawley told him to "get out of there before it explodes." Rogers then turned to get a fire extinguisher in an attempt to put out the fire, and out of the corner of his eye, he saw the front of the truck engulfed in flames. Crawley did not follow Rogers into the building. Rogers called 911 at 5:47 a.m. while walking through the shop to the west "man door," and he opened the first bay door on the west side about halfway. Rogers stated that he thought if the fire department could get there quickly enough, they might be able to put it out. Rogers then walked out of the shop, only to return shortly thereafter, remembering that he left his keys inside. When he went back inside, he found the entire shop filled with black smoke and he could not see anything. Approximately three to four minutes after calling 911, the police arrived on the scene, followed by the fire department.

Rogers testified that within five minutes of speaking with a police officer on the scene, "you can hear drums exploding, something exploding in the building." And by 6:00 a.m. "there were flames coming out of the roof of the building." Rogers testified that there were several flammable materials in the building at the time of the fire, including "brake cleaning," oil, diesel fuel, acetylene torches, and starting fluid. Rogers stated that Crawley would not have been working with any of these flammable materials on the morning of the fire.

* * * * * *

In addition to the Brook Park fire department on the scene, the fire's investigation was conducted by Todd Stitt of the Fire, Explosion, and Investigation Bureau of the Ohio State Fire Marshal's Office, Charles Hanni, an arson investigator with the marshal's office, and Don Illig, special agent with the Cleveland office of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). Lieutenant Johnson testified that the marshal's office and ATF were called in due to the high dollar loss value of the commercial property.

On August 9, 2012, during an interview with Investigator Stitt and Special Agent Illig at the ATF offices, Crawley denied any involvement in the cause of the fire. However, after Crawley failed a polygraph test, he admitted to causing the fire. Crawley offered approximately four different versions of the events of August 6 before he settled on his final version. He admitted to using a red plastic gas container to pour fuel onto the seat of the cab of the truck in Bay 2. He stated that he

3

> then lit the fluid in the cab with his lighter, closed the cab door, and disposed of his lighter in a blue drum that was being used as a trash can. Crawley stated that he set the fire because "for the last several years, I have been racially discriminated against by Jeff B., who is the director of Valley Sterling Truck dealership located in Brook [P]ark." Crawley memorialized his confession in both written and orally recorded form. Lieutenant Johnson testified that he spoke with ATF a couple of days after the fire and, based upon information he received from ATF, he collected a red plastic gas can from a work bench near the truck in Bay 2 and a lighter from a blue barrel used as a trash can that was located in Bay 2. Both items were turned over to the police department.
>
> Jeffrey Britenbucher, the fixed operations manager at Valley Freightliner, is responsible for the parts and service departments and all matters concerning the building that housed Valley Freightliner. Britenbucher stated that it was his job to keep the business operational. As early as 8:00 a.m. on the morning of the fire, he began to put a plan together in an effort to continue the business and find work for Valley Freightliner's employees.
>
> Britenbucher's duties also included evaluating the property damage and assessing and reporting loss to the insurance company. Within a matter of days after the fire, when he was permitted to enter the building, he began to sort through the damaged property. He testified at trial regarding the ownership and value of all of the property damaged by the fire, including the building, the business, the vehicles, and the personal property of the technicians.

(Doc. 7, RX 11, at [2]-[7]; State v. Crawley, No. 99636, 2014 WL 1327510, at *1-*3

(Ohio Ct. App. Mar. 13, 2014).)

Crawley filed a timely notice of appeal, and set forth the following four

assignments of error:

> 1. In a prosecution for Aggravated Arson, O.R.C. § 2909.02(A)(1), the state must prove that the Defendant created a "substantial risk of serious physical harm to any person." In this case, the State failed to provide "sufficient" evidence that the Defendant created a "substantial risk of serious physical harm["] to Mr. Rogers as alleged in the indictment.

4

>2. The direct examination of Jeffrey Britenbucher relating to both the ownership and monetary values of the motor vehicles and the personal tools of the workers at Valley Freightliner violated the Sixth Amendment to the United States Constitution, Confrontation Clause, because the Court allowed the admission of testimonial statements of a witness who did not appear at trial as to ownership and damages suffered to the personal property including motor vehicles, destroyed in the arson, thereby depriving the Defendant of an opportunity for cross-examination.
>
>3. The trial court committed plain error and violated O.R.C. § 2941.25 by failing to merge Counts 3-24 pursuant to O.R.C. § 2941.25.
>
>4. The trial court committed plain error and violated O.R.C. § 2941.25 by failing to merge Counts 1 and 2 pursuant to O.R.C. § 2941.25.

(Doc. 7, RX 9.) The court of appeals sustained the third assignment of error, as to Counts 22 through 24 only, but otherwise affirmed the trial court's judgment. (Doc. 7, RX 11; Crawley, 2014 WL 1327510.)

Crawley appealed to the Supreme Court of Ohio, raising the following two propositions of law:

>1. The trial court committed plain error and violated O.R.C. § 2941.25 by failing to merge Counts 3-24 pursuant to O.R.C. § 2941.25.
>
>2. The trial court committed plain error and violated O.R.C. § 2941.25 by failing to merge Counts 1 and 2 pursuant to O.R.C. § 2941.25.

(Doc. 7, RX 13.) On July 23, 2014, the state high court declined to accept jurisdiction. (Doc. 7, RX 15; State v. Crawley, 139 Ohio St.3d 1484, 12 N.E.3d 1229 (2014).)

The trial court resentenced Crawley on February 24, 2015, to a total sentence of sixteen years. (Doc. 7, RX 16.)

Crawley then filed a timely petition for a writ of habeas corpus in this court.

## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus.  Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court.  The Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002).  See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set

forth in [Supreme Court] cases." Williams, 529 U.S. at 405. See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect. Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law. Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

### III. PROCEDURAL DEFAULT

The respondent contends that the sole ground of the petition was not fairly presented to the state courts, because the claim was never raised before the Supreme Court of Ohio. (Doc. 7, at 8-9.)

A habeas claim may be procedurally defaulted in two distinct ways. First, by failing to comply with state procedural rules. Williams v. Anderson, 460 F.3d 789, 806 (6th Cir. 2006) (citing Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986)). Second, by failing to raise a claim in state court, and to pursue the claim through the state's ordinary review process. Williams, 460 F.3d at 806 (citing O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999)). The respondent argues that Crawley's claim was not properly exhausted in state court.

A habeas petitioner cannot obtain relief unless he has completely exhausted his available state remedies. Coleman v. Thompson, 501 U.S. 722, 731 (1991); Buell v. Mitchell, 274 F.3d 337, 349 (6th Cir. 2001) (citing Coleman v. Mitchell, 244

F.3d 533, 538 (6th Cir.), cert. denied, 534 U.S. 977 (2001)). To satisfy the exhaustion requirement, a habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 845. The exhaustion requirement is satisfied when the highest court in the state has been given a full and fair opportunity to rule on the petitioner's claims. Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994) (citing Manning v. Alexander, 912 F.2d 878, 881 (6th Cir. 1990)). Where the petitioner failed to present a claim in state court, a habeas court may deem that claim procedurally defaulted because the Ohio state courts would no longer entertain the claim. Adams v. Bradshaw, 484 F.Supp.2d 753, 769 (N.D. Ohio 2007) (citing Buell, 274 F.3d at 349).

Although Crawley raised this claim at the Ohio Court of Appeals through his direct appeal, he failed to maintain his sufficiency of the evidence claim before the Supreme Court of Ohio. Before that court, Crawley only raised his claims that the trial court failed to properly merge counts of the indictment. (Doc. 7, RX 13.)

Crawley has failed to properly exhaust his claim by giving the state high court a full and fair opportunity to rule on his constitutional claim. Rust, 17 F.3d at 160, (citing Manning, 912 F.2d at 881). Crawley cannot return to state court to exhaust the claims because the Ohio Supreme Court has ruled that arguments that could have been raised in an initial appeal (and were not) will be barred from consideration on appeal following remand, under the doctrine of res judicata. State

v. Hutton, 100 Ohio St.3d 176, 182, 797 N.E.2d 948, 956 (2003); State v. Gillard, 78 Ohio St.3d 548, 549, 679 N.E.2d 276 (1997), cert. denied, 523 U.S. 1108 (1998).

"If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." Williams, 460 F.3d at 806 (citing Engle v. Isaac, 456 U.S. 107, 125 n.28 (1982)). Where state court remedies are no longer available to the petitioner, procedural default and not exhaustion bars habeas review. Id. Where the petitioner fails to demonstrate cause and prejudice to excuse the default, the claim is barred. Id. at 807. Crawley has failed to file a traverse, thus has made no showing of cause and prejudice.

The sole claim in Crawley's petition is procedurally defaulted. The petition should be denied because Crawley did not give the state high court a full and fair opportunity to rule on his claim. Rust, 17 F.3d at 160.

The petition should be denied.

RECOMMENDATION

The petition for a writ of habeas corpus should be denied.

Dated:   Mar. 22, 2016                   /s/ Kenneth S. McHargh
                                        Kenneth S. McHargh
                                        United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file

9

objections within the specified time WAIVES the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).